IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY LATHAM,<br>    Plaintiff<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br>    Defendants. | C.A. No. 06-128 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [Document # 19], be granted.

**II. REPORT**

  **A. Procedural History**

On June 1, 2006, Plaintiff Larry Latham, an inmate incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq. Named as Defendants are: United States of America ("United States"); James Sherman, Warden at FCI-McKean ("Sherman"); Rodney Smith, Health Services Administrator at FCI-McKean ("Smith"); The Utilization Review Committee at FCI-McKean ("URC"); Dennis Olson, M.D., Clinical Director at FCI-McKean ("Olson"); Charles Montgomery, Physician Assistant at FCI-McKean ("Montgomery"); John Lamanna, former Warden at FCI-McKean ("Lamanna"); and Ned Watson, Counselor at FCI-McKean ("Watson").

Plaintiff alleges that his rights under the eighth amendment to the United States Constitution have been violated as a result of the individual Defendants' deliberate indifference to his serious medical needs. (Complaint at Section VI.A.1-6). Plaintiff also alleges that

Defendant United States is liable under the FTCA for the individual Defendants' negligence in their treatment of his various medical conditions. (Complaint at Section VI.A.7). As a result of these claims, Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 19], arguing that: (I) Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted; (ii) the individual Defendants are entitled to qualified immunity; (iii) Defendants Sherman, Smith, Montgomery, and Lamanna should be dismissed because they were not personally involved in Plaintiff's medical care; (iv) Plaintiff has failed to exhaust his administrative remedies regarding his Bivens claim against Defendants Sherman and Watson; (v) Plaintiff's FTCA claim should be dismissed as untimely; and (vi) Defendant United States is statutorily immune from any claim of negligence against Kane Community Hospital and its employees. Plaintiff has filed a brief in opposition to Defendants' motion essentially restating the allegations of his Complaint. [Document # 26]. This matter is now ripe for consideration.

### B.     Relevant Factual History[1]

Shortly after arriving at FCI-McKean, Plaintiff reported to sick call on October 1, 1998, with complaints of experiencing pain in his left foot for the past two months. (Olson Declaration at ¶ 3(a)). Examination revealed slight tenderness and swelling in the left heel area, and he was assessed with tendinitis. (Id.). He was prescribed Motrin for pain and told to return for an x-ray if the pain persisted. (Id.). In March 2000, Plaintiff was seen by FCI-McKean's medical staff on two occasions for continued left heel pain. As a result, an x-ray of Plaintiff's left heel was taken on April 13, 2000, which showed slight spurring in the Achilles heel area. (Id. at ¶ 3(b)).

On August 7, 2000, Plaintiff again complained of left heel pain, at which time he was told to apply moist heat to his heel and was prescribed Motrin for pain. (Id. at ¶ 3(c)). On

---

[1] The summation of the medical record in this case has been taken from the Declaration of Dennis Olson, M.D., attached as Exhibit 2 to Document # 20, Defendant's Brief (herein referred to as "Olson Declaration").

September 22, 2000, Plaintiff returned to sick call for his heel pain. An x-ray of the heel showed spurring, and he was referred to an orthopedic consultant, who was a physician in private practice under contract with FCI-McKean to provide medical services. (Id.).

On September 26, 2000, Plaintiff was seen by the orthopedic consultant, who recommended two full heel cups, elevation of the foot, pain medication and ice. The consultant also suggested tennis shoes with the back cut out to avoid irritation of the Achilles tendon, and recommended casting of the foot for four weeks if the pain persisted. (Id. at 3(d)). Plaintiff was subsequently seen in FCI-McKean's chronic care clinic on October 10, 2000, at which time he reported that he felt good. (Id.).

Plaintiff was later seen in FCI-McKean's chronic care clinic on June 13, 2001, September 18, 2001, and November 9, 2001, and did not express any complaints regarding his left heel. (Id. at ¶ 3(e)). On December 19, 2001, Plaintiff returned to the chronic care clinic and affirmatively stated that his left heel pain had resolved and asked to have his physical restrictions removed; however, the physical restrictions were continued to ensure that the problems did not recur. (Id.). During his next visit to the clinic on March 25, 2002, Plaintiff again stated that his left heel pain had resolved and asked that his physical restrictions be removed. Defendant Olson examined Plaintiff's left heel, noted there was no tenderness or swelling, and removed Plaintiff's restrictions. (Id.).

On September 27, 2002, Plaintiff reported that his left heel pain had returned, and that he had tenderness where the Achilles tendon attached. Plaintiff was again referred to the orthopedic consultant, who saw him on November 20, 2002. (Id. at ¶ 3(f)). The orthopedic consultant assessed Plaintiff's condition as Achilles peritendinitis and bone spurs, and recommended surgical removal of the spurs for permanent relief. (Id.). This recommendation was referred to the URC, which determined that conservative treatment should be tried first, since it had previously been successful in resolving Plaintiff's pain. (Id.).

On March 28, 2003, Plaintiff was seen in FCI-McKean's Health Services for left heel pain. He was prescribed a medical idle for three days, insoles, and his pain medication was switched to Ecotrin. (Id. at ¶3(g)). After missing a sick call appointment on April 11, 2003,

3

Plaintiff returned to sick call on April 21, 2003, complaining about his left heel pain and requesting additional time off work. He was advised to purchase a second set of insoles to increase the padding on his heel, continue with the medication, and was given a two day idle from work. (Id.).

Plaintiff next reported to the Health Services Department on July 7, 2003, claiming that his left heel pain was worse and requesting surgery. (Id. at ¶ 3(h)). His pain medication was continued and he was scheduled to see Defendant Olson in the chronic care clinic. (Id.). On July 21, 2003, Plaintiff returned to Health Services without an appointment and demanded to see Defendant Olson; however, Dr. Olson determined that Plaintiff was in no apparent distress and found it inappropriate to see him at that time. (Id.).

On September 19, 2003, Plaintiff was seen in the chronic care clinic for continued problems with his Achilles tendon. Plaintiff was scheduled for a re-check with the orthopedic consultant, which occurred on December 6, 2003. (Id. at ¶ 3(I)). After examination, the consultant again recommended surgery and also recommended that Plaintiff wear low top tennis shoes with an elevated heel. (Id.). One month later, on January 6, 2004, Plaintiff reported to the chronic care clinic indicating that his feet were better and asking that his medical restrictions be lifted. (Id.).

On February 9, 2004, Plaintiff was seen at emergency sick call for an injury to his left lower leg, which he reported hitting five days earlier. (Id. at ¶ 3(j)). On February 23, 2004, Plaintiff was again seen at emergency sick call for his lower left leg, at which time he reported slipping on ice and jamming his big toe. X-rays were taken of his left ankle and no fracture was evident. Accordingly, he was assessed with a left ankle strain and was prescribed Naprosyn for pain. (Id.).

On March 9, 2004, Plaintiff went to sick call requesting an idle from work for continued left ankle pain. He was given an ankle support, an idle for one week, and was advised to use over-the-counter pain medication and to follow up in one week. (Id. at ¶ 3(k)). Plaintiff did not return to sick call until March 30, 2004, at which time he reported that the pain in his ankle had improved, but he had weakness in his left lower leg. (Id.). Upon examination, it was determined

that Plaintiff had a partial tear of his left Achilles tendon, which required surgical intervention. (Id.).  As a result, Plaintiff was referred to an orthopedic surgeon. (Id.).

On April 20, 2004, Plaintiff was seen by the orthopedic surgeon, who agreed that Plaintiff had a partial tear of his left Achilles tendon and recommended exploratory surgery and possible repair. (Id. at ¶ 3(l)).  Plaintiff underwent surgical repair of his left Achilles tendon on May 19, 2004, and was admitted to the hospital for the night.  He was discharged from the hospital with pain medication and returned to FCI-McKean in a plantar cast on May 20, 2004, at which time he reported having difficulty urinating. (Id.).

The next morning, on May 21, 2004, Plaintiff reported to Health Services claiming that he had been unable to urinate since a catheter was removed from him at the hospital. (Id. at ¶ 3(m)).  It was noted that Plaintiff was in acute distress and he was catheterized "with great relief." (Id.).  Plaintiff was released from Health Services at 1:30 p.m. on May 21, 2004, and was returned to his housing unit with instructions on catheter care, and was told to return to Health Services on May 24, 2004, to see if he could urinate on his own. (Id.).

On May 24, 2004, Plaintiff returned to Health Services for removal of his catheter and was allowed to return to his housing unit. (Id. at ¶ 3(n).  Plaintiff reported to Health Services the next day indicating that he was urinating on his own, but his flow was weak and he had more frequent urges to go. (Id.).  He was advised that this may occur after being catheterized. (Id.).  Plaintiff continued to report to Health Services on a daily basis complaining that, although he was able to urinate, he did so frequently and in small amounts. (Id.).  He also reported back pain, for which he was prescribed Naprosyn. (Id.).

On May 31, 2004, Plaintiff reported that his ability to urinate had improved, but he had complaints of constipation, abdominal and back pain, and swelling in his left groin. (Id.).  He was assessed with a hernia.  On June 2, 2004, Plaintiff was readmitted to the hospital after blood test results showed he had elevated levels of BUN and creatinine, which indicated urinary retention. (Id. at ¶ 3(o)).  He was discharged from the hospital on June 5, 2004, with a diagnosis of acute renal failure. (Id.).  The discharge summary explained that the insertion of the catheter during Plaintiff's Achilles tendon surgery irritated his prostrate and caused some bleeding.  As a

5

result, Plaintiff suffered a bladder outlet obstruction. (Id.). The discharge plan was to allow a Foley catheter to remain in place for two weeks to allow any inflammatory changes to resolve. (Id.).

Upon return to FCI-McKean, Plaintiff's urinary retention was monitored daily by Health Services. On June 21, 2004, Plaintiff had blood work done, which revealed lower levels of BUN and creatinine. (Id. at ¶ 3(p)). The Foley catheter was removed on June 24, 2004; however, a catheter was reinserted the next day showed that he had retained a large amount of urine. (Id.). As a result, Plaintiff was instructed to leave the catheter in place and was told that a urologist would be contacted. A urologist was subsequently consulted and advised staff to leave the catheter in place for a prolonged period of time, from 2 to 10 weeks, and to follow up with tests. (Id.).

On August 6, 2004, Plaintiff's plantar cast was removed by the orthopedic surgeon, who found Plaintiff's Achilles tendon to be intact. (Id. at ¶ 3(q)). With regard to his urinary retention problem, Plaintiff was seen in Health Services regularly, and by the urologist on July 19, 2004, August 4, 2004, August 23, 2004, and September 13, 2004. Notes from these visits documented that Plaintiff's urinary retention problem was resolving, but he needed to continue using the catheter. (Id.).

On October 19, 2004, Plaintiff had routine check-up in the chronic care clinic, at which time he reported that the catheter had "shot out" while he was urinating, and he had since been urinating on his own with no problem. (Id. at ¶ 3®). He was catheterized to determine if there was any residual urine left in his bladder and the amount was normal. (Id.). On November 15, 2004, Plaintiff was seen by the urologist, who noted that Plaintiff was "doing quite well" and was urinating on his own without difficulty. (Id.). Plaintiff was then seen in the chronic care clinic on November 19, 2004, where he was found to have full range of motion in his left ankle and he reported that his urinary retention problem had resolved. (Id.).

**C.     Standards of Review**

**1.     Motion to Dismiss**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).  As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at ___, 1974.

**2.     Summary Judgment**

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted

if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under

applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

D.  Discussion

1.  Statute of Limitations - FTCA

Defendants move to dismiss Plaintiff's FTCA claim due to Plaintiff's failure to file his complaint within the applicable statute of limitations.

The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a). The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted).  The consent contained in the FTCA is limited. 28 U.S.C. § 2680(a)-(n); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). The burden of establishing subject matter jurisdiction in this case lies with the plaintiff.  Robinson v. U.S., 849 F.Supp. 799, 801 (S.D.Ga.1994).

The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit.  28 U.S.C. § 2675(a); See also Williams v. United States, 1995 WL 769497 (E.D.Pa. 1995) citing Bradley v. United States, 856 F.2d 575 (3d Cir. 1988), vacated on other grounds, 490 U.S. 1002 (1989).  The FTCA further provides that any lawsuit must be filed in court within six months of the rejection of the claim by the agency.  28 U.S.C. § 2401(b).

In this case, Plaintiff submitted his administrative tort claim with the Federal Bureau of Prisons ("BOP") on June 18, 2004. (See Declaration of Donna Johnson attached as Exhibit 5 to Document # 20 ("Johnson Declaration") at ¶ 3a and Exhibit 1).  This claim was denied by the BOP's Northeast Regional Counsel by memorandum dated December 3, 2004. (Johnson Declaration at ¶ 3c and Exhibit 3).  Plaintiff signed an acknowledgment that he received the denial of his claim on December 9, 2004. (Johnson Declaration at ¶ 3d and Exhibit 4).  On April 30, 2005, Plaintiff submitted a letter to the BOP requesting reconsideration of the denial of his administrative tort claim. (Johnson Declaration at ¶ 3e and Exhibit 5).  By letter dated May 12, 2005, the Northeast Regional Counsel rejected Plaintiff's request because he failed to submit

10

any additional documentation that would warrant reconsideration. (Johnson Declaration at ¶ 3f and Exhibit 6).

Plaintiff's complaint in this matter is purportedly dated September 29, 2005, but was not received by the Clerk of Court until June 1, 2006, nearly eighteen months after Plaintiff received notice of the denial of his administrative tort claim and, thus, well beyond the FTCA's six-month statute of limitations for an FTCA claim. Even if May 12, 2005 - the date the BOP denied Plaintiff's request for reconsideration of his first administrative tort claim - is used as the benchmark, this action was still filed more than six months beyond such date. Thus, Plaintiff's FTCA claim should be dismissed for Plaintiff's failure to comply with the applicable six-month statute of limitations.

### 2. Eighth Amendment Claim

Plaintiff claims that the individual Defendants acted with deliberate indifference toward both his left heel condition and his urinary problems, in violation of his Eighth Amendment rights. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[2] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk

---

[2] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

11

of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

In this case, Plaintiff's medical records indicate that Plaintiff received continual treatment and monitoring of both his left heel and urinary conditions. In particular, the records indicate that Plaintiff was seen by Defendant Olson and/or members of FCI-McKean's medical staff on, at least, 14 occasions for consultation and treatment of his left heel condition. During these visits, Plaintiff received prescription medication and shoe insoles to relieve his pain. In addition, the medical records document that Plaintiff had x-rays of his left foot area taken on three occasions to assess the origin of Plaintiff's left heel and ankle pain. Plaintiff was also referred to an outside orthopedic consultant, who saw Plaintiff on, at least, three occasions, and who ultimately performed surgery to repair Plaintiff's Achilles tendon. This plethora of medical consultation and treatment belies Plaintiff's claim of deliberate indifference toward his left heel condition.

Similarly, the medical records indicate that Plaintiff was seen by FCI-McKean's medical staff on a daily basis, from May 24, 2004 through June 24, 2004, for the monitoring and treatment of his urinary problems. During this time, Plaintiff received pain medication and was catheterized to relieve his discomfort, and had blood tests taken to monitor his condition. When blood tests revealed elevated levels of BUN and creatinine, Plaintiff was promptly admitted to the hospital for treatment and insertion of a Foley catheter. After the Foley catheter was removed on June 24, 2004, and Plaintiff continued to retain urine, the medical staff consulted a urologist, who advised the staff to continue Plaintiff on a catheter for an additional two to ten weeks, and to monitor his progress. Thereafter, Plaintiff was seen by medical staff on a regular basis until his urinary problems finally resolved in November 2004. This continued monitoring

and treatment of Plaintiff's urinary problems demonstrates that Defendant were anything but deliberately indifferent to Plaintiff's medical condition.

Although with each of his medical conditions, Plaintiff believes Defendants failed to resolve his problems in a timely manner, a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

Based on the foregoing, therefore, this Court concludes that Plaintiff's Eighth Amendment deliberate indifference claims against the individual Defendants should be dismissed, as a matter of law.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss, or in the alternative, motion for summary judgment [Document # 19], be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C)), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

/s/ SusanParadise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated:  August 23, 2007

cc:      The Honorable Sean J. McLaughlin
         United States District Judge